IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**Xiomara Santiago**
**Plaintiff**

**v.**

**Municipality of Utuado**
**Defendant.**

Civil No. 21-1140 (GAG-GLS)

**REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff Xiomara Santiago's request for a preliminary injunction. Docket No. 2. Plaintiff claims that she was terminated from her employment as Deputy Director of the Head Start and Early Head Start Program ("HS/EHS") in the Municipality of Utuado (the "Municipality") because of her political affiliation to the Popular Democratic Party ("PDP"). Id. Plaintiff seeks an order reinstating her as Deputy Director and enjoining Defendant from engaging in further discriminatory conduct. Id. The District Judge referred the matter to the undersigned for a Report and Recommendation. Docket No. 32. For the reasons discussed below, the undersigned recommends that Plaintiff's request for a preliminary injunction be **DENIED**.

### I.      Procedural Background

On March 29, 2021, Xiomara Santiago ("Plaintiff") filed a Verified Complaint against the Municipality alleging that her active participation in the 2020 political campaign of former Utuado Mayor Ernesto Irizarry Salvá, from the PDP, against his contender from the New Progressive Party ("NPP"), Jorge Pérez Heredia, resulted in a pattern of political discrimination that concluded with her termination as Deputy Director of the HS/EHS of the Municipality. Docket No. 1. Plaintiff claims that the Municipality violated her rights under the First Amendment of the U.S. Constitution. Plaintiff also claims that the Municipality violated her due process rights under the Fourteenth Amendment of the U.S. Constitution since she was not provided notice and opportunity for hearing before termination. Plaintiff asserts supplemental jurisdiction for claims under Article II of the Constitution of the Commonwealth of Puerto Rico and under Articles 1536 and 1540 of the Puerto Rico Civil Code. Plaintiff moved the Court for a preliminary injunction requesting

reinstatement to the position of Deputy Director of the HS/EHS. Docket No. 2. On April 19, 2021, Defendant filed an opposition alleging that Plaintiff does not meet the requirements for the issuance of an extraordinary remedy such as a preliminary injunction and that the Municipality had legitimate reasons for her termination. Docket No. 16. Plaintiff replied. Docket No. 29.

An evidentiary hearing was held on May 17, June 9, June 25 and July 2, 2021. The Court heard the testimonies of Mayor José Pérez Heredia, Human Resources Officer Blas Rosado, and Plaintiff Xiomara Santiago. The following documentary evidence was admitted:

| Plaintiff's | Exhibits |
|---|---|
| 1 | Screenshots of WhatsApp messages from Pérez Heredia to Plaintiff |
| 2 | Letter from Mayor Pérez Heredia to Mr. Manuel Mena dated January 15, 2021 |
| 3 | Letter from Mr. Manuel Mena to All Staff dated February 16, 2021 |
| 4 | Letter from Sandra Torres (OATRH) to Mayor Irizarry Salvá dated December 8, 2021 |
| 5 | Transitory Services Contract signed by Plaintiff on December 30, 2020 |
| 6 | Letter from Mr. Manuel Mena and Mayor Pérez Heredia to All Staff dated March 1, 2021 |
| 7 | Termination letter from Mayor Pérez Heredia to Plaintiff dated February 26, 2021 |
| 8 | Transcript of radio interview of Mayor Jorge Pérez Heredia |
| 9 | Letter from Christian Quiñones to Mayor Jorge Pérez Heredia dated January 16, 2021 |
| Defendant's | Exhibits |
| 1 | Job Vacancy Notice 2020-2021: Deputy Director HS/EHS |
| 2 | Employment Application Form |

## II.    Preliminary Injunction Standard

A preliminary injunction is an extraordinary and drastic remedy, which should not be granted unless the movant clearly carries the burden of persuasion. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)(emphasis in original)(quoting 11A Wright, Miller & Kane, Federal Practice and Procedure §2948 (2d ed. 1995)). It is within the court's discretion to determine whether the burden of persuasion has been met. Id. (citing Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940); Anheuser–Busch, Inc. v. Teamsters, 511 F.2d 1097, 1099 (1st Cir. 1975)).

The Court considers the following factors in evaluating a request for a preliminary injunction: (1) plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiff; and (4) the effect, if any, that the injunction

(or lack thereof) would have on the public interest. See Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012); New Comm Wireless Services., Inc. v. SprintCom, Inc., 287 F.3d 1, 8-9 (1st Cir. 2002). Though each factor is important, "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Sindicato Puertorriqueño de Trabajadores, 699 F.3d at 10 (citing New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002)); see e.g., López v. Garriga, 917 F.2d 63, 70 (1st Cir. 1990)(holding that once plaintiff's constitutional claim failed, he was left without any sound basis for injunctive or declaratory relief).

"In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." Sindicato Puertorriqueño de Trabajadores, 699 F.3d at 10. Notwithstanding the foregoing, a court's conclusion as to the merits of a claim at preliminary injunction stage is to be understood as a statement of probable outcome only. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991). At this stage, the Court need not predict the eventual outcome on the merits; "it is both the trial courts' prerogative and its duty to assess the facts, draw whatever reasonable inferences it might favor, and decide the likely ramifications." Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble, 864 F.2d 927, 933 (1st Cir. 1988). But likelihood of success cannot be based on speculation and surmise. Narragansett Indian Tribe v. Guilbert, 934 F.2d at 6.

In the First Circuit, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Sindicato Puertorriqueño de Trabajadores, 699 F.3d at 11 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)); Asociación de Educación Privada de Puerto Rico, Inc. v. García–Padilla, 490 F.3d 1, 21 (1st Cir. 2007); Maceira v. Pagán, 649 F.2d 8, 18 (1st Cir.1981)("It is well established that the loss of first amendment freedoms constitutes irreparable injury."). Accordingly, when a movant is likely to succeed on his First Amendment claim, irreparable injury is presumed. Id.

With regards to the third factor— the comparable hardship — the court is required "to examine, and perform a comparison between the injuries suffered by plaintiff outweighing any harm which granting injunctive relief would inflict on the defendant." Allman v. Padilla, 979 F.Supp. 2d at 213 (citing DeNovellis v. Shalala, 135 F.3d 58, 77 (1st Cir.1998)). And the final factor in the Court's preliminary injunction analysis— the effect that an injunction could have on

the public interest— is measured by whether the public interest would be better served by issuing than by denying the injunction. Id. (citing Massachusetts Coalition of Citizens with Disabilities, et al. v. Civil Defense Agency and Office Emergency Preparedness, 649 F.2d 71, 74 (1st Cir.1981)).

### III.    Factual Analysis Per the Testimonial and Documentary Evidence

Plaintiff and Jorge Pérez Heredia ("Pérez Heredia") have known each other since a young age because they attended the same junior high school in Utuado and some of their family members are acquaintances. Pérez Heredia's testimony on May 17, 2021; Plaintiff's testimony on July 2, 2021. Plaintiff is a member of the PDP and Pérez Heredia is a member of the NPP. Id. Pérez Heredia was a candidate for Mayor of the Municipality in the 2008 NPP primaries. Id. Even though Plaintiff is a long-standing member of the PDP, she voted for Pérez Heredia in the 2008 NPP primaries. Plaintiff's testimony on July 2, 2021. Pérez Heredia lost in the 2008 NPP primaries. Id. Plaintiff voted for the PDP candidate for Mayor of the Municipality during the 2008 general elections. Id. In 2020, Plaintiff worked on the re-election campaign of PDP candidate for Mayor of the Municipality, Ernesto Irizarry Salvá ("Irizarry Salvá"). Id.

On February 25, 2020, Irizarry Salvá announced a job posting for the position of Deputy Director of the HS/EHS. Defendant's Exhibit 1. The HS/EHS provides comprehensive services that promote the school readiness of children from low-income families, by promoting their cognitive, social and emotional development. Docket No. 16, Exhibit 8. The Municipality has been the concessionaire of the HS/EHS since 2017 and receives federal funds to provide these services in the municipalities of Utuado, Adjuntas and Lajas. Id.; Pérez Heredia's testimony on May 17, 2021. The HS/EHS operations in Puerto Rico are overseen by Region 2 of the Head Start Offices in New York and its operations are highly regulated. See 45 C.F.R. §§1305 et seq.; Pérez Heredia's testimony on May 17, 2021.

The job announcement for the position of Deputy Director of the HS/EHS had the following minimum requirements: a bachelor's degree in business administration or education from an accredited institution, three (3) years of experience in the HS/EHS, one (1) year of experience in a similar position, and full command of the English language. Defendant's Exhibit 1. In the alternative, a candidate with two (2) years of experience in the HS/EHS could qualify for the position *if* the candidate had a master's degree in business administration or education from an accredited institution. Defendant's Exhibit 1. The following documents had to be submitted as part of the application: resumé, credit transcript, diploma, certificate of good standing or negative

criminal record, and certification of compliance with the filing of income tax returns. Id. The job announcement stated that candidates had to meet the minimum requirements and submit all the required documents *prior to the closing date*. Id. Applications that were incomplete or submitted after the closing date would not be accepted. Id.

Plaintiff submitted her application on the closing date, March 9, 2020. Defendant's Exhibit 2. In her job application, Plaintiff informed that she had seventeen (17) months (from October 2018 until March 2020) of work experience as a teacher in a Head Start Program[1] and that she had worked in the Municipality as Director of Ornate and Recycling from 2012 until 2018. Id. and Docket No. 16, Exhibit 3. Upon signing the application, Plaintiff declared that the information provided was true and that, upon discovery of falsehood or fraud in the application, she could be removed from the position, if appointed. Defendant's Exhibit 2. Plaintiff's job application was received by Blas Rosado, Human Resources Officer for the HS/EHS ("Rosado"), which he sent to the Parents' Committee or Normative Policy Council.[2] Rosado's testimony on June 25, 2021. The Parents' Committee was in charge of reviewing the applications, interviewing the candidates, and determining whether the candidates complied with the minimum requirements. Id. Only two candidates applied for the position of Deputy Director and Plaintiff was selected by the Parents' Committee. Rosado's testimony on June 9, 2021. In August 2020, Plaintiff was hired by the Municipality for the position of Deputy Director of the HS/EHS. Id. Plaintiff signed a Transitory Services Contract for a period of five (5) months; from August to December 2020. Id.; Plaintiff's testimony on July 2, 2021.

On August 15, 2020, Plaintiff received a text message from Pérez Heredia which included a photo of Pérez Heredia and stated: "I count on you tomorrow". Plaintiff's Exhibit 1. This was a political dissemination message sent the day before the NPP primaries to all the contacts in Pérez Heredia's cellular phone, including Plaintiff. Pérez Heredia's testimony on May 17, 2021. Plaintiff ignored the text. Plaintiff's testimony on July 2, 2021. Pérez Heredia prevailed in the NPP primaries. Id.

---

[1] Through a private entity called Urban Strategies. Plaintiff's testimony on July 2, 2021.
[2] Known in Spanish as the "Comité de Padres" or the "Consejo de Política Normativa". This committee is composed of parents of students enrolled in the HS/EHS. Rosado's testimony on June 25, 2021.

On October 23, 2020, Pérez Heredia called Plaintiff but was unable to reach her. Pérez Heredia's testimony on May 17, 2021. Pérez Heredia then sent Plaintiff a text message stating: "Greeting[s], I only ask you to do things right, friend." Plaintiff's Exhibit 1. Plaintiff did not understand the message so she called Pérez Heredia. Plaintiff's testimony on July 2, 2021. Pérez Heredia told Plaintiff that he had a list of PDP supporters who were being investigated by the federal government because they were engaging in electoral fraud and that her name was on the list. Id. Pérez Heredia also informed Plaintiff that he had filed a complaint with the Puerto Rico Police against Rosado because he was allegedly visiting voters' homes and impersonating NPP officials to obtain mail-in votes. Pérez Heredia's testimony on May 17, 2021. Plaintiff was surprised by these allegations and felt threatened by Pérez Heredia, who was very upset during the call. Plaintiff's testimony on July 2, 2021. Plaintiff told Pérez Heredia that she was not afraid because she had not done anything illegal but that she would not place her hands on fire for anyone.[3] Id. Plaintiff continued campaigning for the re-election of PDP incumbent Mayor Irizarry Salvá. Id. Pérez Heredia prevailed in the November 2020 elections.

On December 3, 2020, Mayor Irizarry Salvá sought, through a letter sent by Rosado to the Puerto Rico Human Resources Management and Transformation Office ("OATRH"), a waiver or "dispensa" for the renewal of 239 transitory employee contracts for the HS/EHS, including that of the Deputy Director. Plaintiff's Exhibit 4. As stated in the letter from the OATRH dated December 8, 2020, the U.S. Department of Health and Human Services approved the funds for hiring personnel for the HS/EHS fiscal year 2021 (January 1, 2021 through December 31, 2021) through the Notice of Award Number 02CH010489-05-00. Id.; Rosado's testimony on 6/25/2021. The waiver was granted by the OATRH on December 8, 2020. Id.

On December 30, 2020, Plaintiff's employment contract as Deputy Director of the HS/EHS was renewed for one (1) year; from January 1, 2021 to December 31, 2021. Plaintiff's Exhibit 5; Rosado's testimony on June 25, 2021. In the Transitory Services Contract, Plaintiff certified that she complied with the minimum requirements for the position and that she would perform the duties established in the attachment to the contract. Plaintiff's Exhibit 5 at ¶ 2. The contract also established several potential reasons for termination, including: failure to comply with the hourly

---

[3] To date, Plaintiff has not received any formal notification of an investigation regarding her alleged participation in electoral fraud. Plaintiff's testimony on July 2, 2021.

schedule (id. at ¶¶ 4-5); failure to comply with contracting requirements established by the Government of Puerto Rico and HS/EHS regulations (id. at ¶¶ 10-13); failure to comply with duties (id. at ¶ 22); and poor performance evaluation, lack of need for the services, budget reduction, a restructuring or reorganization of offices/centers/areas, and any other extraordinary reason (id. at ¶ 23).

On January 11, 2021, Pérez Heredia was sworn in as Mayor of Utuado. Pérez Heredia's testimony on May 17, 2021. That same day, Pérez Heredia met with the Director of the HS/EHS, Christian Quiñones ("Quiñones"). Id. Pérez Heredia had a disagreement with Quiñones regarding the authorization granted by Quiñones for employees to work remotely while renovations to various HS/EHS centers were conducted. Id. and Plaintiff's Exhibit 9. On January 14, 2021, Quiñones went on sick leave. Id. Pérez Heredia then appointed Manuel Mena Berdecía ("Mena") as the person "in charge" of the HS/EHS. Id.; Plaintiff's Exhibit 2. Mena was not an employee of the Municipality or the HS/EHS and did not have a services contract with the Municipality. Pérez Heredia's testimony on May 17, 2021 and June 9, 2021. Mena, an NPP supporter and contributor, provided his services to the Municipality voluntarily and without compensation. Id. Mena had vast experience in HS/EHS and was appointed to oversee the operation of the HS/EHS while the Mayor could decide on the appointment of an interim Director. Id.

On January 16, 2021, while on sick leave, Quiñones wrote a letter to the Mayor stating, among other things, that Plaintiff would assume the position of interim Director of the HS/EHS during his absence. Plaintiff's Exhibit 9. On January 19, 2021, Plaintiff wrote a letter to all the supervisors and coordinators of the HS/EHS informing that she would assume the role of interim Director during Quiñones' absence. Docket No. 16, Exhibit 7.

At some point after January 11, 2021 but before February 11, 2021, the Mayor held a meeting with the high management and area coordinators of the HS/EHS. Pérez Heredia's testimony on May 17, 2021; Rosado's testimony on June 25, 2021; Plaintiff's testimony on July 2, 2021. Approximately thirteen (13) people attended the meeting, including Plaintiff, the Mayor and Mena. Id. The employees were notified prior to the meeting that they would discuss the progress of the projects of HS/EHS. Pérez Heredia's testimony on May 17, 2021. During the meeting, the Mayor asked all the officers about different topics related to their respective areas, such as, accounting, human resources, transportation and enrollment. Id.; Rosado's testimony on June 25, 2021. Plaintiff was asked seven (7) questions, which she was unable to answer. Pérez

Heredia's testimony on May 17, 2021. The Mayor concluded that Plaintiff lacked knowledge regarding the HS/EHS's basic operations even though she had been occupying the position of Deputy Director for seven (7) months. Id. and Docket No. 16, Exhibit 10 at ¶¶ 10-11.[4]

On February 11, 2021, the HS/EHS Governing Board unanimously decided to terminate Plaintiff's employment.[5] Pérez Heredia's testimony on June 9, 2021; Plaintiff's Exhibit 7. On February 16, 2021, Mena— following the Mayor's instructions— wrote a letter to all HS/EHS personnel stating that Ángel A. Vélez Rivera ("Vélez Rivera"), Program Director at the HS/EHS, was the officer authorized to sign all administrative documents regarding accounting, purchases, human resources and any official reports. Plaintiff's Exhibit 3; Pérez Heredia's testimony on May 17, 2021. In a meeting at her office, Plaintiff told the Mayor that she was being pushed aside by Mena, who would coordinate meetings with her co-workers and would fail to include her in such meetings; and that he would get in trouble due to Mena's actions. Id. The Mayor did not respond. Id.

On February 26, 2021, Plaintiff was notified about her termination, which became effective on March 5, 2021. Plaintiff's Exhibit 7. The termination letter states that the HS/EHS Governing Board, at a meeting held on February 11, 2021 and upon the Mayor's request, unanimously decided to terminate Plaintiff as Deputy Director of the HS/EHS. Id. Plaintiff was not informed whether she had the right to an administrative hearing. Id.; Pérez Heredia's testimony on June 9, 2021. Plaintiff was surprised by her termination because she had expected to be employed until the conclusion of her contract on December 31, 2021. Plaintiff's testimony on July 2, 2021.

Quiñones resigned as Director of the HS/EHS on March 1, 2021. Plaintiff's Exhibit 6; Pérez Heredia's testimony on May 17, 2021. That same day, the Mayor appointed Vélez Rivera as interim Director of the HS/EHS Program. Id. The Mayor had the authority to appoint Vélez Rivera as interim Director. Plaintiff's testimony on July 2, 2021. Currently, the Director of the HS/EHS Program is a female who possesses a doctorate degree in education and a master's degree in

---

[4] During the hearing, Plaintiff was asked if she knew the organizational chart of the HS/EHS and she could only remember three positions within the organization. Plaintiff's testimony on July 2, 2021. Plaintiff could not answer whether the Municipality was required to contribute twenty percent (20%) of its funds to the HS/EHS. Id. And did not know whether the funds approved by the federal government to the HS/EHS were delivered in one lump sum. Id.

[5] The Municipality must establish and maintain a formal structure of program of governance that includes, among others, a governing body and a parent committee. 45 C.F.R. §1301.1

finance. Pérez Heredia's testimony on May 17, 2021 and June 9, 2021. The position of Deputy Director remains vacant. Id.

After Plaintiff's termination, the Mayor participated in a radio interview. Plaintiff's Exhibit 8. Upon being questioned about his decision to terminate Plaintiff, the Mayor stated that Plaintiff demonstrated an inability to perform the duties of the position of Deputy Director. Id. The Mayor stated that during a meeting Plaintiff was unable to answer seven (7) questions posed to her in Quiñones' absence. Id. The Mayor went on to express that "they" did not have the passwords for Enterprise and AMC (programs used to enter data required by the HS/ES Program), "they" did not know anything about the accounts, "they" did not know anything about the proposals, and that, consequently, the Municipality was about to lose five million dollars in Head Start funds.[6] Id. Without specific reference to Plaintiff[7], Mayor Pérez Heredia criticized the members of the PDP who used to "carry the briefcase" for former Mayor Irizarry Salvá. Id.

## IV. Discussion

### A. Fourteenth Amendment – Due Process Clause

"Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." Figueroa–Serrano v. Ramos–Alverio, 221 F.3d 1, 5–6 (1st Cir. 2000)(citing Kercado–Melendez v. Aponte–Roque, 829 F.2d 255, 263 (1st Cir. 1987)). The Fourteenth Amendment thus protects government employees who possess property interests in continued public employment. See Mercado-Ruiz v. Carazo, 2016 WL 1171508 *6 (D.P.R. 2016) (citation omitted). When an individual has a property interest in an employment, he cannot be deprived of such an employment without prior notice and an opportunity for hearing. See Kercado-Meléndez v. Aponte-Roque, 829 F.2d at 263; Camacho-Morales v. Caldero, 68 F.Supp.3d 261, 292 (D.P.R. 2014) (citing Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). "At a minimum, due process rights entitle such individuals to 'notice and a meaningful opportunity to respond' prior to termination." Figueroa–Serrano v. Ramos–Alverio, 221 F.3d at 5–6 (citing Kercado–

---

[6] In this portion of the interview, the Mayor was referring to all the HS/EHS employees that attended the meeting. Plaintiff's Exhibit 8.
[7] The Mayor was referring to Astrid Raquel Cruz Negrón, a Municipal Legislator of the Pro Independence Party ("PIP"), who the Mayor stated was a "Popular" (referring to a PDP supporter) representing the PIP.

Meléndez v. Aponte-Roque, 829 F.2d at 263). See also Acevedo–Feliciano v. Ruiz–Hernández, 447 F.3d at 121 ("In the public employment context, the required process typically includes 'some kind of hearing' and 'some pretermination opportunity to respond.'").

The burden of establishing a due process claim under the Fourteenth Amendment rests on the plaintiff. See Hatfield-Bermúdez v. Aldanondo-Rivera, 496 F.3d 51, 59 (1st Cir. 2007). This includes the burden of establishing a clearly established or legitimate claim of entitlement to— not a unilateral expectation of— property interest of which she could not be deprived absent due process of law. Id. at 60-61; Rodríguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40 (1st Cir. 1993). A property interest may be created or defined by existing rules of understandings that stem from state law or from a contract. Id. The Court thus examines local law and the terms and conditions of the employment arrangement to determine whether a public employee possesses a protected property right. See Mercado-Ruiz v. Carazo, 2016 WL 1171508 *6 (D.P.R. 2016) (citation omitted); Camacho-Morales v. Caldero, 68 F.Supp.3d at 292 (property interests or expectation of job retention "may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace.").

Under Puerto Rico law, career employees enjoy a property interest in their continued employment. See López-Rosado v. Molina-Rodríguez, 2012 WL 4681956 *2 (D.P.R.) (citing González-De-Blasini v. Family Department, 377 F3d 81, 86 (1st Cir. 2004)). Transitory employees enjoy the same protection but only during the term of their appointment. Transitory employees generally do not have a property interest in continued employment beyond the term of their appointment or contract. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 (1997); López-Rosado, 2012 WL 4681956 at *2 (property interests ceases upon expiration of the appointment of transitory employees); Hatfield-Bermúdez, 496 F.3d at 60-61 (under Puerto Rico law, "transitory employees", who enter into a contract with a public entity, have "a job retention expectancy only during the term of the appointment.").

Notwithstanding the foregoing, a public employee hired in violation of Puerto Rico law may not claim a property right or continued expectation of employment because such an appointment is null and void *ab initio*. See González-De-Blasini, 377 F.3d at 86 (citations omitted); see also Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 7 (1st Cir. 2000) (when granting of career status is void, there is no constitutionally protected property interest and plaintiff cannot prevail in due process claim); Feliciano v. De Jesús, 873 F.2d 447, 453-455 (1st Cir. 1989)(employees did

not possess a constitutionally protected property interest in their jobs because they were never legally appointed to their positions and, consequently, had no cognizable due process claims). Further, because an employment acquired in violation of Puerto Rico law is null and void, continued employment under the same circumstances does not give an employee a developed property interest in such an employment. Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1173 (1st Cir. 1988)(rejecting argument that plaintiffs hired illegally and who worked under such status for some time could claim a developed legitimate expectation of permanent employment).

The question in this case is whether Plaintiff had a property interest in her employment that could trigger the constitutional protection of the Due Process Clause. At first blush, Plaintiff would appear to have a property interest of which she could not be deprived absent due process because she was a transitory government employee terminated during the second month of her twelve-month contract without the benefit of prior notice and hearing. However, upon consideration of the testimonies at the hearing and the documentary evidence on the record, the contrary conclusion is warranted. Plaintiff's appointment as Deputy Director of the HS/EHS Program was contrary to law and Plaintiff thus lacked a property interest in the continuation of her employment contract.

Pursuant to Article 2.042 of the Puerto Rico Municipal Code, Puerto Rico Law Number 107-2020, as amended, 21 P.R. Laws Ann. §§ 7001 *et seq*. ("Law No. 107-2020"), the human resources recruitment system of municipalities is governed by the merit principle so as to promote excellence in public service based on equity, justice, efficiency, productivity, and without discrimination on the basis of, among others, political ideals. 21 P.R. Laws Ann. § 7231. In recruiting personnel, all municipalities are thus required to offer any *qualified person* interested in participating in the municipalities' public endeavors the opportunity to occupy available career or transitory positions. 21 P.R. Laws Ann. §§ 7235-7237. The municipalities must make a public announcement for all employment opportunities setting forth the requirements of the post and select personnel based solely on the merits of the candidates or *qualified persons*. 21 P.R. Laws Ann. § 7237. It thus follows that, under the Puerto Rico's Municipal Code, and pursuant to the merit principle under which it is premised, the Municipality was bound to publicize the availability of the position of Deputy Director of the HS/EHS, its minimum requirements, and offer any *qualified person* interested in participating in public service the opportunity to compete for the position. See 21 P.R. Laws Ann. §7231-7237.

The job announcement for the position of Deputy Director of the HS/EHS had the following minimum requirements: a bachelor's degree in business administration or education from an accredited institution, three (3) years of experience in the HS/EHS (or, in the alternative, two (2) years of experience in the HS/EHS if the candidate possessed a master's degree in business administration or education), one (1) year of experience in a similar position, and full command of the English language. Defendant's Exhibit 1. However, there is no dispute that, contrary to the minimum requirements announced, by the time Plaintiff submitted her application for employment, she only had seventeen (17) months (rather than the minimum three (3) years) of previous experience in HS/EHS. Id.; Docket No. 16, Exhibit 3. Further, pursuant to the requirements of the job announcement, Plaintiff had to submit a certificate of good standing or negative criminal record and certification of compliance with the filing of income tax returns prior to March 9, 2020, the closing date for the job announcement. Defendant's Exhibit 1. But Plaintiff's Certification of Penal Record from the Puerto Rico Police Department and the Certification of Filing of Tax Returns from the Treasury Department of Puerto Rico were both issued in July 2020; four (4) months after the job announcement's closing date. Docket No. 16, Exhibits IV (a) and (d). Therefore, the evidence in the record clearly establishes that Plaintiff failed to meet the minimum requirements for the position of HS/EHS Deputy Director at the time she applied and that, consequently, her appointment was contrary to the merit principle and Puerto Rico law.[8] Plaintiff's appointment, which was made without giving other *qualified persons* a fair opportunity to compete, was thus null and void and she could not have a legitimate expectation of continued employment through the conclusion of her contract.

It bears noting that during Plaintiff's testimony, Plaintiff appeared to lack knowledge regarding certain fundamental operational topics of the HS/EHS, such as the program's organizational chart and its funding. And even though Plaintiff's lack of knowledge does not defeat her Fourteenth Amendment claim (as does her failure to comply with the minimum requirements of the position as described in the job announcement), it certainly bolsters the Municipality's

---

[8] During the hearing, there was testimony and arguments as to Plaintiff's compliance with the requirement that she dominate the English language and whether her prior experience in the Municipality as Director of Ornate and Recycling was relevant to the position of Deputy Director of HS/EHS. The Municipality also argued in opposition to the request for a preliminary injunction that Plaintiff's appointment was null for other reasons. However, because the Court finds that Plaintiff failed to comply with objective minimum requirements required for the position of Deputy Director there is no need to go further.

contention that Plaintiff was not qualified to hold the position of Deputy Director of the HS/EHS. In sum, Plaintiff's appointment to the position of Deputy Director of the HS/EHS was contrary to Puerto Rico law and, consequently, she does not have an expectation of continued employment at the Municipality. Plaintiff has consequently failed to persuade the Court that she has a likelihood of success in her Fourteenth Amendment claim. See Soto-Padró v. Public Buildings Authority, 675 F.3d 1, 8 (1st Cir. 2012); López v. Garriga, 917 F.2d 63, 70 (1st Cir. 1990). Since the likelihood of success is the *sine qua non* component of the preliminary injunction analysis, the request for a preliminary injunction on due process grounds should be denied.

### B.     First Amendment

Even if a plaintiff's employment is null and void because she/he was hired illegally and does not have a claim for due process violations under the Fourteenth Amendment, such a plaintiff may still prevail on a political discrimination claim if political affiliation was the sole motivation for the employment action at issue. Rosario-Urdaz v. Rivera Hernández, 350 F.3d 219, 224 (1st Cir. 2003); Rosado v. Molina-Rodríguez, 2012 WL 4681956 *4 (D.P.R.). A dismissal based on an employee's failure to support a political party infringes First Amendment freedoms of belief and association. See Elrod v. Burns, 427 U.S. 347, 359-360 (1976). First Amendment protection extends to public employees. See García-González v. Puig-Morales, 761 F3d 81, 92 (1st Cir. 2014). The First Amendment prohibits the termination of public employees due to their political affiliation unless the employer can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office at issue. See Branti v. Finkel, 445 U.S. 507, 518 (1980) (as discussed in Nieves-Villanueva, 133 F.3d at 94). This doctrine applies both to a government's decision not to renew a contract or to terminate a contract of a transitory employee. Nieves-Villanueva, 133 F.3d at 94.

To establish a *prima facie* political discrimination claim, a plaintiff needs to prove that: (1) plaintiff and defendant have opposing political affiliations, (2) defendant is aware of plaintiff's affiliation, (3) an adverse employment action occurred, and (4) political affiliation was a substantial or motivating factor for the adverse employment action. See Reyes-Orta v. Puerto Rico Highway and Transportation Authority, 811 F.3d 67, 73 (1st Cir. 2016) (citations omitted). Plaintiff bears the initial burden to produce sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor behind the adverse employment action. See Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); González-De-Blasini, 377 F.3d at 85

(citing Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977)). Mere temporal proximity between a change of administration and a public employee's dismissal has been found insufficient to establish discriminatory animus. Acevedo Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993); Santiago-Díaz v. Rivera-Rivera, 793 F.3d 195, 200 (1st Cir. 2015)(citing Torres–Santiago v. Municipality of Adjuntas, 693 F.3d 230, 240 (1st Cir.2012)) (coincidence of timing between the transfer of political power and a job reassignment *alone* does not suffice).

Circumstantial evidence alone can support a finding of political discrimination. See Acevedo Díaz v. Aponte, 1 F.3d at 69; Rodríguez-Ríos v. Cordero, 138 F.3d at 24 (a highly charged political atmosphere alone cannot support an inference of discriminatory animus but such an atmosphere, coupled with the fact that plaintiff and defendant are from competing political parties, may be probative of discriminatory animus). However, a discrimination claim cannot be speculative or supported by general allegations. See González-De-Blasini, 377 F.3d at 86; Cosme Rosado v. Serrano-Rodríguez, 360 F.3d 42 (1st Cir. 2004) (finding that the mayor's comment regarding his intention to "rid the town of NPP activists" was not enough to show that political affiliation was motive). "Plaintiff's 'showing requires more than merely juxtaposing a protected characteristic-someone else's politics-with the fact that plaintiff was treated unfairly.'" Rosado v. Molina-Rodríguez, 2012 WL 4681956 *2 (D.P.R.)(citing Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000)). Although a plaintiff need not produce direct evidence (a so-called 'smoking gun') of a politically based discriminatory animus, a plaintiff must *always* show that there is a causal connection linking defendant's conduct and his political beliefs. See Sueiro Vázquez v. Torregrosa De La Rosa, 380 F.Supp.2d 63, 72 (D.P.R. 2005)(citing LaRou v. Ridlon, 98 F.3D 659, 662 (1st Cir. 1996)(emphasis provided)).

Once the plaintiff establishes a *prima facie* case of political discrimination, the burden shifts to the defendant to demonstrate that it would have made the employment decision regardless of plaintiff's political affiliation. Reyes-Orta, 811 F.3d at 73 (citations omitted). For instance, a defendant can defeat liability under Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274 (1977), "by showing that plaintiff's positions were obtained in violation of Puerto Rico law and that, even if political animus was a factor, defendants would have taken corrective action anyway against every employee whose position was obtained in violation of law." Id. (citations omitted). However, the burden of persuasion does not shift back to the plaintiff. Id.; Padilla - García, 212 F.3d at 77. Plaintiff can ultimately prevail by demonstrating that the proffered non-

discriminatory reason for the adverse employment action was pretextual. See Mercado-Ruiz v. Carazo, 2016 WL 1171508 *4 (D.P.R. 2016)(citation omitted). "Plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-García, 212 F.3d at 77. "The evidence by which the plaintiff established her *prima facie* case may suffice for a factfinder to infer that the defendant's reason is pretextual." Padilla -García, 212 F.3d at 78.

Plaintiff in this case easily meets the first three prongs of the *prima facie* political discrimination case: (1) Plaintiff is a PDP supporter and the Mayor of the Municipality is from the NPP; (2) Mayor Pérez Heredia knew Plaintiff was a PDP sympathizer since at least October 23, 2020, when he sent her a text regarding a supposed investigation of PDP supporters;[9] and (3) Plaintiff's transitory employment contract was terminated on March 6, 2021, almost ten (10) months prior to the termination date. The question is whether, at this juncture and without the benefit of full discovery, Plaintiff has established the last prong of the *prima* facie case: that political affiliation was a substantial or motivating factor for the adverse employment action, which requires demonstrating a causal connection between the Municipality's conduct and Plaintiff's political beliefs. While we recognize that a *prima facie* case for political discrimination may be built on circumstantial evidence, Plaintiff has not established specific facts necessary to take the asserted claim out of the realm of speculative and lead the Court to conclude that a political discriminatory animus was at the center of the decision to terminate her employment.

Plaintiff's political discrimination claim is based on the following. In August 2020, prior to winning the general elections and assuming the position of Mayor of the Municipality, the Mayor sent Plaintiff— and all the other contacts in his cellular phone— a text message urging them to vote for him in the upcoming NPP primaries. Two (2) months later, and again before assuming the role as Mayor of Utuado, Pérez Heredia sent Plaintiff a vague text message, which Plaintiff later understood as a warning that her name had been included in a list of members of the PDP who were allegedly being investigated for electoral fraud. There was no further contact between Plaintiff and Pérez Heredia until January 2021, when Pérez Heredia became Plaintiff's direct supervisor after being sworn in as Mayor of Utuado.

---

[9] Pérez Heredia denied knowing for certain whether Plaintiff was affiliated to the PDP because Plaintiff registered under the NPP in 2008 to vote for him in the primaries and he was unaware if she voted in the PDP primaries afterwards in order to become affiliated with the PDP. Pérez Heredia's testimony on May 17, 2021.

There is no evidence of political comments or innuendos made during Plaintiff's employment at the Municipality under Pérez Heredia's supervision. Plaintiff has not even alleged that there was a highly charged political atmosphere at the HS/EHS office or the Municipality. Plaintiff believes that Mena excluded her from meetings but she did not know the topics discussed at those meetings. She was thus unaware if those meetings were related to her functions as Deputy Director or were politically charged. Plaintiff admitted that other co-workers from the HS/EHS office were invited to the meetings with Mena and no evidence was presented regarding these co-workers' political affiliation.

Plaintiff asks the Court to infer a discriminatory animus from the Mayor's decision to withdraw her authorization to sign documents and assign those functions to Vélez Rivera. However, during his testimony, the Mayor clarified that he not only withdrew Plaintiff's authorization but also the authorization of all other previously authorized officers, which includes Quiñones, who was on sick leave. Pérez Heredia's testimony on May 17, 2021. There is also no evidence to conclude that such functions were inherent to the position of the Deputy Director or that Vélez Rivera's political affiliation was a motivating factor for such an appointment. Plaintiff claims that, in the Director's absence, she automatically became the interim Director of the HS/EHS. But she was *not* actually appointed interim Director of the HS/EHS, neither by direct appointment nor automatically. While the Transitory Employment Contract established that one of the duties and responsibilities assigned to the Deputy Director was that he or she *may* substitute the Director in his absence (Plaintiff's Exhibit 5, Attachment A), the evidence sustains— and Plaintiff so admitted— that the Mayor was the nominating authority and that he had the authority to designate an interim Director as long as he/she was a HS/EHS employee, such as Vélez Rivera. Plaintiff's testimony on July 2, 2021; Pérez Heredia's testimony on May 17, 2021. Further, Plaintiff has not pointed to any authority granting her the automatic right to assume such a role when Quiñones went on sick leave.

Plaintiff also questions the purity of the process conducted by the Municipality prior to her termination since the Governing Board was not constituted pursuant to Ordenance 29, which the Mayor admitted was in place at the time the meeting was held.[10] In addition, Plaintiff claims that

---

[10] Ordenance 29 required that the members of the Governing Board be members of the Municipal Assembly. However, at least two members of the Governing Board who participated in the February 11th meeting were members of the community and not from the Municipal Legislature. Pérez Heredia's testimony on May 17, 2021.

her termination had to be approved by the Parents' Committee[11] and that the Mayor in the radio interview admitted that he had not requested their approval. However, while these arguments could have been relevant to the due process inquiry had Plaintiff's appointment not been contrary to law, these arguments are inconsequential to the inquiry under the First Amendment for there is no evidence to effectively link the Governing Board's actions with a politically discriminatory animus against Plaintiff.

In turn, the evidence sustains that Plaintiff's termination, at least partly[12], was due to the fact that she failed to comply with the minimum requirements of the position and with the duties inherent to the position, which are valid grounds for termination under the Temporary Employment Contract. Plaintiff's Exhibit 5 at ¶ 2 and ¶ 22. The evidence presented during the hearing established that, during the meeting between the Mayor and the upper management of the HS/EHS, all attendees were unaware of the status of matters and, as Deputy Director of the HS/EHS, the nominating authority could have reasonably expected Plaintiff to know the answers to the questions posed as she was the highest-ranking officer of the program at the time and she had held the position of Deputy Director for almost seven (7) months. On the other hand, the Mayor's expressions during the radio interview (Plaintiff's Exhibit 8), speak mainly to Plaintiff's purported inability to adequately exercise the functions of her job and the Mayor's comment that PDP followers "carried the briefcase" for former PDP Mayor Irizarry Salvá was not specifically directed at Plaintiff. There is thus no concrete evidence to infer political animus at this stage.

Plaintiff did not establish facts to demonstrate a direct causal connection between Plaintiff's affiliation to the PDP and the Municipality's decision to terminate her employment. All in, at this juncture, Plaintiff's political discrimination claim rests on a text message informing her of an alleged investigation of PDP supporters, her exclusion of meetings of unclear subjects by a non-municipal employee, and her termination by a potentially unauthorized board at the urge of the nominating authority. At this point, Plaintiff's case is conclusory: because she was a PDP

---

[11] Pursuant to 45 C.F.R. §1301.4(b)(3), one of the responsibilities of the Parent's Committee is to participate in the recruitment and screening of EH/HS employees, following the guidelines established by the governing body, policy council or policy committee.

[12] Plaintiff questions a laundry list of reasons provided by the Municipality to justify her termination. However, whether all such reasons are a mere pretext of the Municipality to justify Plaintiff's termination in an attempt to disguise any political motives is, at this point, irrelevant since Plaintiff failed to establish the fourth element of her *prima face* case of political discrimination—that political affiliation was a substantial or motivating factor for the adverse employment action.

sympathizer and supported Irizarry Salvá instead of NPP candidate Pérez Heredia in the 2020 general elections, she was terminated by Pérez Heredia based upon her political affiliation. The evidence is insufficient to justify the issuance of a preliminary injunction in her favor. See e.g. Olivencia de Jesús v. Puerto Rico Elec. Power Auth. (D.P.R. 2014)(preliminary injunction denied for plaintiff's failure to adduce enough facts to prove a *prima facie* political discrimination case).

## V. Conclusion

Plaintiff has not demonstrated a likelihood of success on the merits of her claims under the U.S. Constitution in order to justify a preliminary injunction. Plaintiff's appointment to the position of Deputy Director was null depriving her of a claim for due process violations. And Plaintiff failed to present sufficient evidence to establish a *prima facie* claim of political discrimination in violation of the First Amendment. The undersigned thus recommends that Plaintiff's request for a preliminary injunction be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court.  Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file specific objections within the specified time precludes further review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F. 2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987); Maisonet v. Genett Group, Inc., 863 F.Supp.2d 138, 143 (D.P.R. 2012)(absent specific objection, no obligation to review portion of Magistrate Judge's recommendation).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 28th day of July 2021.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge